## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GARELD DUANE ROLLINS, JR., <br> *Plaintiff;* <br><br> -vs.- <br><br> H. PAUL PRESSLER III, NANCY PRESSLER, PAIGE PATTERSON, JARED WOODFILL, THE WOODFILL LAW FIRM, F/K/A WOODFILL & PRESSLER, L.L.P., SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY FIRST BAPTIST CHURCH OF HOUSTON, SOUTHERN BAPTIST CONVENTION, AND SECOND BAPTIST CHURCH OF HOUSTON, <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18–cv-00775 <br><br><br> **REMOVED FROM THE 127TH DIST. COURT OF HARRIS COUNTY, TX CASE NO. 2017-69277** |

## <u>AFFIDAVIT OF BROOKS SCHOTT</u>

| | |
|---|---|
| THE STATE OF WASHINGTON | § |
| | § |
| COUNTY OF SPOKANE | § |
| | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared BROOKS SCHOTT, known by me by presentation of his government issued photo I.D. to be the person whose signature appears below, and who, being by me duly sworn, did depose as follows:

"My name is BROOKS SCHOTT. I am over the age of 18 years, mentally competent, and not otherwise disqualified by law from making an affidavit. In the above captioned removed case, under its Rule 194 Disclosures, I am listed as a person with knowledge of relevant facts. This affidavit makes explicit the 'relevant facts reference' to me in the state court Disclosures that I feel are relevant to this matter in federal court. Those relevant facts that follow are within my first hand knowledge and are true and correct.

"I am 27 years old. I live in Spokane, Washington where I was raised. I attended university at Eastern Washington University in Cheney, Washington. After I completed my undergraduate studies, I attended law school at Willamette College of Law in Salem, Oregon.

"I first met Jared Woodfill in 2016 while still in my third year of law school. I visited Houston at the suggestion of my father through a religious pastoral connection. My

-1-

EXHIBIT "A"

father is a pastor of a non-denominational church in Spokane who had the occasion to preach at a church in The Woodlands, the pastor of which is Matt Woodfill, the brother of Jared Woodfill. At a service at which my father preached, he met Jared Woodfill who apparently then learned of my law school status. Upon information and belief, an invitation was made to me through my father to travel to Houston to explore the possibility of employment in Woodfill Law Firm after graduation.

"Based on an exploratory visit in March 2016, Jared Woodfill offered me a job after graduation. Consequently, I took the Texas Bar Exam in July of 2016 rather than in Washington State. After the exam, I then changed my domicile to Texas and, in August of 2016, began to work for the Woodfill law firm as a law clerk. Then, upon successful admission in Texas in November 4, 2016, I became a junior associate upon passing the Texas Bar Exam.

"During my time working for the Woodfill law firm, Jared Woodfill had me accompany him to a number of political events. On one such occasion, I was introduced to Former Judge Paul Pressler. Jared Woodfill told me that Pressler was his former law partner and mentor for over 25 years. He told me that Pressler was a 'hero of the faith' and a 'great man.' I saw Pressler at a number of subsequent political dinners.

"Sometime in October of 2016, I was instructed to make a copy of a settlement agreement between Rollins and Pressler. I was concerned about its contents because they did not coincide with the high praise Jared had heaped on Pressler. When I asked Jared about the discrepancy, he told me that Pressler had opened his heart and home to Rollins, but Rollins took advantage of Pressler and attempted to extort money from him. At that time I believed his explanation.

"In December of 2016, at a political fund-raiser held at Dr. Steven Hotze's home, Pressler sought me out and invited me to go to lunch 'to get to know one another better.' I asked Jared whether it was a good idea for me to go to lunch with Pressler and he encouraged me to do so in spite of what I knew about the settlement agreement. Consequently, the following week, I met Pressler at his house to pick him up for lunch. When I rang the doorbell, Pressler opened the door but was not fully clothed. He was not wearing any trousers and told me that he was running late and had trouble dressing himself due to his poor health. After Pressler had dressed himself, he gave me a tour of his office and showed me pictures of all the 'important people' he had met. He then asked me about my family ancestry. Upon learning that I was German and Danish, Pressler told me a story about going swimming naked in Denmark with other young men when he was younger.

"At lunch, Pressler told me about his ranch and all of its amenities including a ten person hot tub. Pressler then told me that 'when the ladies are not around, us boys all go in the hot tub completely naked.' He then invited me to go naked hot tubbing with him at his ranch. This invitation was clearly made in anticipation that I would engage in sexual activity with him on the pretext of a hot tub experience. It was

clearly a solicitation.  I was embarrassed but as politely as possible, I replied that I was not interested in going to his ranch.

"After lunch I returned to the Woodfill Law firm and informed the office manager, Ken Kennedy, what had happened.  He informed me that this was not the first time that Pressler had acted inappropriately around young men.

"On December 9, 2016, I sent an email to Jared informing him of Presslers lewd behavior at the lunch (*see* email chain, attached incorporated herein by reference). Jared denied any knowledge of Pressler behaving in this manner in the past.  Jared also assured me that he would talk to Pressler about his behavior and that I would never have to see Pressler again.  Over the next few months, the entire office learned about Pressler soliciting me.  I also discovered that Pressler had a long history of such behavior – even going as far as bringing scantily clad young men and parading them around the office.

"I resigned from the Woodfill Law firm in May of 2017.  A true and correct copy of my resignation letter is attached.  I bring it to this Court's attention since it involves state court judges' awareness of Pressler's behavior.  As a lawyer, licensed in Texas, I have read the Motion to Remand in this case on PACER.  I note that the fourth prong of cited test requires that 'federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.'  I believe that what happened to me involves attorney misconduct and further, reveals that there is widespread knowledge about Woodfill and Pressler in the Harris County judicial community. Consequently, it is my opinion that what happened to me is pre-eminently a state judicial responsibility such that retention of federal jurisdiction would arguably disturb the balance of federal and state judicial responsibilities."

AFFIANT SAYS NOTHING FURTHER.

_____
BROOKS SCHOTT, Affiant

SWORN TO AND SUBSCRIBED BY BROOKS SCHOTT this _11th_ day of _April_ 2018 to certify which witness below my hand and seal of office.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF WASHINGTON

SEAL:

-3-

Subject:   Fwd: Hours

From:   bschott@willamette.edu

To:   brooksschott@yahoo.com

Date:   Thursday, February 9, 2017 07:25:31 AM PST

---------- Forwarded message ----------
From: **Brooks Schott** <bschott@willamette.edu>
Date: Sat, Dec 10, 2016 at 12:24 AM
Subject: Fwd: Hours
To: brooksschott@yahoo.com

---------- Forwarded message ----------
From: **JARED WOODFILL** <jwoodfill@woodfilllaw.com>
Date: Sat, Dec 10, 2016 at 12:10 AM
Subject: Re: Hours
To: Brooks Schott <bschott@willamette.edu>

Brooks,

   I obviously feel that the conduct you described by Judge Pressler is unacceptable.  He does not work for the firm and you never have to speak to him again.  I too will address it with him since I have known him for many years.  With respect to serious issues like this, I suggest you come straight to me instead of Ken.  I think you have a lot of strengths and skills that can be further developed.  Brooks, my door is always open to you and I will always treat you respectfully even when we disagree on an issue.  I will raise your salary by $10,000 and make sure Ken starts you on insurance.  I suggest we start on January 1 due to the start of a new year.  We will continue to adjust your salary as your billable hours increase.  Remember, I am for you and want you to succeed!

Jared

Sent from my iPhone

On Dec 9, 2016, at 11:53 PM, Brooks Schott <bschott@willamette.edu> wrote:

   Mr. Woodfill,

   I appreciate everything you have done and I appreciate you addressing these issues. I do not mean any disrespect to you, this has been a highly stressful situation for me. I look forward to addressing these issues with you in person at your earliest convenience.

On Fri, Dec 9, 2016 at 11:40 PM, JARED WOODFILL <jwoodfill@woodfilllaw.com> wrote:

   Brooks,

   First, Paul is not my law partner anymore and has not been for many years. Second, this 85 year old man has never made any inappropriate comments or actions toward me or any  one I know of.  I will address your comments with him.  I will also address Ken's comments with him.  Third, the tone of your email is inappropriate in my opinion.  It is a direct attack on me and I am shocked you would

even allude to the fact that I some how deceived you with respect to someone I have known since 1995 and has always been appropriate with me. I am willing to give you a raise, but have been stuck in a bad move situation.  I have gone out of my way to help you get experience and contacts.  Again, I will address the situation with Judge Pressler.   It appears you are unhappy with the firm and we need to discuss this.

Jared

Sent from my iPhone

On Dec 9, 2016, at 11:21 PM, Brooks Schott <bschott@willamette.edu> wrote:

Mr. Woodfill,

There has been a situation at the law firm that needs to be addressed by you immediately. When I went to lunch with your partner and mentor Paul Pressler he made inappropriate sexual advances towards me. He told me a few lewd stories about being naked on beaches with young men and then he invited me out to his farm to go naked hot-tubing with him. He asked me if I would be comfortable doing that, which I told him I was not.

The following day, your office manager Ken asked me how my lunch with Pressler went. He expressed his dislike of Pressler and how he had made advances towards young men in the past. He then asked me if Pressler invited me into his hot-tub naked with him. There is no way that Ken would ask me that question unless this situation had arisen before. I told Ken that Pressler had made inappropriate sexual advances towards me. If Ken knew of Pressler's past inappropriate sexual behavior I find it hard to believe that you did not know about it.

Second, when you originally offered me a job you told me that I would be put on the health insurance plan. You also told me that I would start at a salary of $65,000 and that upon passing the bar that I would get a raise. When I started working at the firm in August, there was no health insurance plan. I passed the bar on November 3, 2016. It is now December 9, 2016 and I have not received a raise, nor have you communicated whether I will get a raise in the near future.

I moved from Washington to Texas based on the promises you made. I also moved to Texas because I share the same conservative values as you and respect and admire the causes that you champion. Your brother is my pastor and I love his family. Your parents are wonderful people. For everyone's sake I need you to address this and make it right.

Sincerely,

-Brooks Schott

On Fri, Dec 9, 2016 at 8:47 PM, JARED WOODFILL <jwoodfill@woodfilllaw.com> wrote:

What CPS trial?

Sent from my iPhone

On Dec 9, 2016, at 8:38 PM, <bschott@willamette.edu> <bschott@willamette.edu> wrote:

There is nothing scheduled for Monday. We have CPS trial Wednesday morning.

Sent from my Windows 10 phone

---

**From:** JARED WOODFILL
**Sent:** Friday, December 9, 2016 7:56 PM
**To:** bschott@willamette.edu
**Subject:** Re: Hours

What is my schedule for Monday?

Sent from my iPhone

On Dec 9, 2016, at 7:17 PM, <bschott@willamette.edu> <bschott@willamette.edu> wrote:

Yes. I will send them when I get back from church.

Sent from my Windows 10 phone

---

**From:** JARED WOODFILL
**Sent:** Friday, December 9, 2016 6:51 PM
**To:** bschott@willamette.edu
**Subject:** Hours

Can you send me your hours for the past three days?  Thanks.

Sent from my iPhone

<Timesheet 12.7.xlsx>

May 17, 2017

Woodfill Law Firm, P.C.

3 Riverway, Suite 750

Houston, Texas 77056

Mr. Woodfill,

I am writing this letter inform you that I can no longer continue to work at the Woodfill Law Firm, P.C. Please view this as my two week notice. Although I am grateful for the opportunity to have started my professional career with your firm, I am disturbed by the series of events that have occurred while working for you. First, Judge Pressler, your mentor of 25 years and former partner in your law firm, solicited me for homosexual acts at a lunch I had with him, during work hours this past December. When Pressler requested I go have lunch with him, you encouraged me to go even though you knew that Pressler had a previous settlement agreement for previous inappropriate conduct where he solicited other young men for homosexual acts. I have since been informed by your office manager that Pressler has a history of soliciting young men and attempting to use his position as a retired judge to exert undue influence on them. When I informed you of these inappropriate acts, you promised me that you would deal with the situation and I would not have to deal with Judge Pressler in the future. However, within two weeks you had my drive you to a political luncheon at Pappasitos that Judge Pressler was also attending.

My reputation in the legal community has also been damaged due to the incident with Pressler. In January of this year, Judge Sydow told Cyndi to tell me to "stay away from hot tubs," a clear reference to when Judge Pressler asked me to go naked hot tubing with him at his ranch. This comment has made it awkward every time I have to appear in court in front of him. I did not tell Judge Sydow, so I do not know how he would have found out about that incident. Judge Sydow is not the only judge in Harris County who knows about my experience with Judge Pressler. Judge Valhakas has also made comments to me alluding to this event. I have no idea how many people in the legal community know about this situation and I would prefer not to find out. You can imagine how this would make any young lawyer feel when trying to start their legal career. Especially when I have a reputation which is associated with a religious belief system that does not condone Pressler's inappropriate behavior.

This does not even address the medical insurance I was promised through the firm that I have never received, the month delay in getting a raise after passing the bar, and the recent inappropriate comments made by other employees. Most recently, after informing you that I was not comfortable riding alone in the car with Amy you insisted I escort her to interview a witness at night due to safety concerns. On the car ride over she made multiple inappropriate comments about sleeping with co-workers, showed me old pictures of her when she was "hot," and made an accusation that she thought Cyndi and I were sleeping together when she first started working for

the firm. This comment is obviously untrue and highly unprofessional. Not only do these types of situations create a hostile work environment, but they can also hurt a person's marriage and reputation. I informed Ken of this situation, but there was no follow up.

I moved to Texas based on your reputation as a Christian politician and representations you made to me about the state of your law firm. Since moving to Texas and working for your firm, I have encountered numerous situations that are completely inexcusable. As a result, my reputation in the legal community has been tarnished, I have depleted my savings, and I have lost the opportunity for other jobs I could have pursued over the past year of my life. All I am asking for is restitution. To be put back in the position I would have been had I never relied on your representations as to who you were or what your firm was like. My expenses for taking the Texas bar and moving to Houston are as follows:

| | |
|---|---|
| Plane flight for interview in February | $500.00 |
| Texas Bar Exam Fee | $495.00 |
| Bar Exam Prep Course | $3,400.00 |
| Plane flight for Bar Exam in July | $500.00 |
| Hotel cost for Bar Exam in July | $250.00 |
| Truck Rental for Moving to Houston | $600.00 |
| Hotels for Moving to Houston | $300.00 |
| Apartment Security deposit | $1,500.00 |
| **Total Costs:** | **$7,545.00** |

These costs do not include the damage to my reputation in the legal community, the lost job opportunities, and mental anguish I have suffered since August of last year. I am willing to sign a release of all claims, confidentiality agreement, and mutual nondisparagement in exchange for the sum of $10,000.00. This amount reflects the costs of moving to Texas outlined above plus two weeks' severance. This will permit us to part ways amicably and allow me to move on with my life. It is my hope that we can come to an agreement. Thank you for your attention to this matter.

Sincerely,

/ Brooks Schott

Brooks Schott